UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

                           :

UNITED STATES OF AMERICA         :      SEALED
                            :      <u>INDICTMENT</u>
         -v-                  :

ARMEN KAZARIAN,
     a/k/a "Pzo,"
     a/k/a "Qerop,"
DAVIT MIRZOYAN,
ROBERT TERDJANIAN,
     a/k/a "Robik,"
     a/k/a "Oleg Kamarine,
     a/k/a "Robert Vovk,"
ALEKSANDR AVETISYAN,
     a/k/a "Vladimir Arushunyan,"
HERAYER BAGHOUMIAN,
     a/k/a "Vazken,"
POGOS SATAMYAN,
ARTUR YEPISKOPOSYAN,
     a/k/a "Butania,"
VAGAN STEPANIAN,
VARUJAN AMROYAN,
     a/k/a "Varush,"
JACOB POGOSIAN,
KAREN SIMONIAN,
VARTAN BOYZADZHYAN,
     a/k/a "Levon Papikan,"
     a/k/a "Ararat Bedrousian,"
ARTUR MANASARIAN,
GOURGEN MIRIMANIAN,
     a/k/a "Edo,"
MANUK MURADAKHANYAN,
     a/k/a "Manch,"
LIANA SOGHOYAN,
TIKRAN TAKVORYAN,
GAYANE KHATCHATURYAN,
GAGIK KYURKCHYAN,
ANNA ZAICHIK,
ARON CHERVIN,
KAREN AHARONIAN,
ARMEN GRIGORIAN,
KAREN MARKOSIAN,
ANNA TERMARTIROSYAN,
MICHAEL DOBRUSHIN
SAMVEL HAKOPYAN, and
RAFIK TERDJANIAN,

       Defendants.

- - - - - - - - - - - - - - - - - - - x

10 CRIM 895



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED 9/30/10

COUNT ONE
(Racketeering Conspiracy)

The Grand Jury charges:

The Enterprise

1.     At all times relevant to this Indictment, ARMEN
KAZARIAN, a/k/a "Pzo," a/k/a "Qerop," DAVIT MIRZOYAN, ROBERT
TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert
Vovk," ALEKSANDR AVETISYAN, a/k/a "Vladimir Arushunyan," HERAYER
BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN,
a/k/a "Butania," VAGAN STEPANIAN, VARUJAN AMROYAN, a/k/a
"Varush," JACOB POGOSIAN, KAREN SIMONIAN, VARTAN BOYADZHYAN,
a/k/a "Levon Papikan," a/k/a "Ararat Bedrousian," ARTUR
MANASARIAN, GOURGEN MIRIMANIAN, a/k/a "Edo," MANUK MURADKHANYAN,
a/k/a "Manch," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE
KHATCHATURYAN, GAGIK KYURKCHYAN, ANNA ZAICHIK, ARON CHERVIN, and
KAREN AHARONIAN, the defendants, and others known and unknown,
were members and associates of the Mirzoyan-Terdjanian
Organization (or the "Organization").  The Mirzoyan-Terdjanian
Organization was a criminal organization whose members and
associates engaged in crimes including a scheme to defraud
Medicare of more than $100 million, a scheme to defraud
automobile insurance companies that provide health care benefits
to accident victims, bank fraud, identity theft, money
laundering, credit card fraud, narcotics distribution, contraband

cigarette distribution, immigration fraud, extortion, and other offenses.

2.    The Mirzoyan-Terdjanian Organization, including its leadership, membership, and associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4) -- that is, a group of individuals associated in fact.  This enterprise was engaged in, and its activities affected, interstate and foreign commerce.  The Mirzoyan-Terdjanian Organization was an international organized crime group with leadership based in Los Angeles and New York City and that operated throughout the United States, including in the Southern District of New York, and internationally.  The Mirzoyan-Terdjanian Organization constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.    The Mirzoyan-Terdjanian Organization maintained strong ties to Armenia.  Most members and associates of the Mirzoyan-Terdjanian Organization were Armenian nationals or immigrants, and many maintained substantial ties to Armenia, including regular travel to Armenia, criminal connections to individuals residing in Armenia, the transfer of criminal proceeds to Armenia, the purchase of real estate and other assets in Armenia with criminal proceeds, and the operation of

3

businesses in Armenia funded by criminal proceeds obtained in the United States.

4.     The Mirzoyan-Terdjanian Organization operated with assistance from and under the protection of a "Vor," a Russian term translated as "Thief-in-Law," and referring to a member of a select group of high-level criminal figures from Russia and the Former Soviet Union who receives tribute from other criminals, offers protection, and uses his recognized position of authority to resolve disputes among criminals, including through threats and instances of violence.   In particular, the Mirzoyan-Terdjanian Organization was aligned with ARMEN KAZARIAN, a/k/a "Pzo," a/k/a "Qerop," an Armenian-American residing in the United States with substantial influence in the criminal underworld.

5.     The criminal conduct of the Mirzoyan-Terdjanian Organization was directed principally, though not exclusively, by two of its leaders:  DAVIT MIRZOYAN, based in Los Angeles, and ROBERT TERDJANIAN, based in New York City.   MIRZOYAN and TERDJANIAN worked together to lead multiple criminal ventures including a scheme to defraud Medicare, health care fraud, bank fraud, identity theft, money laundering, credit card fraud, narcotics distribution, contraband cigarette distribution, immigration fraud, extortion, and other crimes.   MIRZOYAN and TERDJANIAN were assisted by numerous criminal partners and

4

associates throughout the United States and in Armenia and
elsewhere.

### The Defendants

6.    Vor ARMEN KAZARIAN, a/k/a "Pzo," a/k/a "Qerop,"
the defendant, was a powerful figure in Russian / Former Soviet
Union organized crime who immigrated to the United States from
Azerbaijan in approximately 1996 and resided in the United States
as an alleged asylee despite his regular and recent travels to
Armenia and Azerbaijan.  KAZARIAN used his position as a Vor to
resolve criminal disputes in the United States, Armenia and
elsewhere with implicit and sometimes explicit threats of
violence.  KAZARIAN was a well-respected figure to other members
and associates of the Mirzoyan-Terdjanian Organization, including
to TERDJANIAN and MIRZOYAN themselves, and is consulted on and
provides assistance in connection with the activities of the
Organization.

7.    DAVIT MIRZOYAN, the defendant, was a participant
in the enterprise, the Mirzoyan-Terdjanian Organization, and was
a leader of the enterprise.  In this capacity, MIRZOYAN
participated in and profited from various crimes, which he
committed along with other members and associates of the
Mirzoyan-Terdjanian Organization.  Among other things, MIRZOYAN
led a large-scale, nationwide Medicare scam that fraudulently
billed Medicare for over $100 million.

8.   ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," the defendant, was a participant in the enterprise, the Mirzoyan-Terdjanian Organization, and was a leader of the enterprise. In this capacity, TERDJANIAN participated in and profited from various crimes, which he committed along with other members and associates of the Mirzoyan-Terdjanian Organization.  Among other things, TERDJANIAN worked with MIRZOYAN in operating the Medicare billing fraud scheme and directed New York-based members and associates of the Mirzoyan-Terdjanian Organization in a range of criminal ventures.

9.   ALEKSANDR AVETISYAN, a/k/a "Vladimir Arushunyan," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN, a/k/a "Butania," JACOB POGOSIAN, KAREN SIMONIAN, VARTAN BOYADZHYAN, a/k/a "Levon Papikan," a/k/a "Ararat Bedrousian," ARTUR MANASARIAN, GOURGEN MIRIMANIAN, a/k/a "Edo," MAUNK MURADKHANYAN, a/k/a "Manch," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE KHATCHATURYAN, GAGIK KYURKCHYAN, and KAREN AHARONIAN, the defendants, are all Los Angeles-based participants in the enterprise, the Mirzoyan-Terdjanian Organization. In this capacity, these defendants participated in and profited from various crimes, which they committed along with other members and associates of the Mirzoyan-Terdjanian Organization.

10.   VAGAN STEPANIAN, VARUJAN AMROYAN, a/k/a "Varush," ARON CHERVIN, and ANNA ZAICHIK, the defendants, were all New

6

York-based participants in the enterprise, the Mirzoyan-Terdjanian Organization.  In this capacity, these defendants participated in and profited from various crimes, which they committed along with other members and associates of the Mirzoyan-Terdjanian Organization.  Additionally, ARON CHERVIN, together with ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," and others conspired to execute a scheme to defraud automobile insurance companies that provide medical coverage to individuals who have been in car accidents through the operation of multiple medical clinics in the New York area that billed for unnecessary medical treatments.

<u>Purposes of the Enterprise</u>

11.  The purposes of the enterprise included the following:

a.  Enriching the leaders, members, and associates of the enterprise through fraud, money laundering, identity theft, extortion, cigarette smuggling, narcotics distribution, and other crimes; and

b.  Preserving and augmenting the power, territory, and financial profits of the enterprise through intimidation, violence, and threats of physical and economic harm.

<u>Means and Methods of the Enterprise</u>

12.   Among the means and methods by which ARMEN
KAZARIAN, a/k/a "Pzo," a/k/a "Qerop," DAVIT MIRZOYAN, ROBERT
TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert
Vovk," ALEKSANDR AVETISYAN, a/k/a "Vladimir Arushunyan," HERAYER
BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN,
a/k/a "Butania," VAGAN STEPANIAN, VARUJAN AMROYAN, a/k/a
"Varush," JACOB POGOSIAN, KAREN SIMONIAN, VARTAN BOYADZHYAN,
a/k/a "Levon Papikan," a/k/a "Ararat Bedrousian," ARTUR
MANASARIAN, GOURGEN MIRIMANIAN, a/k/a "Edo," MANUK MURADKHANYAN,
a/k/a "Manch," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE
KHATCHATURYAN, GAGIK KYURKCHYAN, ANNA ZAICHIK, ARON CHERVIN, and
KAREN AHARONIAN, the defendants, their co-conspirators, and other
members and associates conducted and participated in the conduct
of the affairs of the Mirzoyan-Terdjanian Organization were the
following:

a.   Members and associates of the Mirzoyan-
Terdjanian Organization and their co-conspirators worked together
on a range of money-making criminal fraud schemes, including a
scheme to defraud Medicare of over $100 million by stealing the
identities of doctors, setting up fake medical clinics in their
names, and then stealing identities of patients so that Medicare
could be billed for millions of dollars of fictitious medical
treatments.  Members and associates of the Mirzoyan-Terdjanaian

8

Organization and their co-conspirators also directed a scheme to defraud automobile insurance companies providing medical benefits for alleged accident victims.

     b.    Members and associates of the Mirzoyan-Terdjanian Organization and their co-conspirators used the nationwide presence of their Organization to traffic in various contraband and stolen goods, including the manufacture and distribution of credit cards obtained in the names of others, the distribution of counterfeit or stolen Viagra, and the distribution of contraband (untaxed) cigarettes.

     c.    Members and associates of the Mirzoyan-Terdjanian Organization and their co-conspirators took steps to protect their ability to gain entry to and remain in the United States so as to carry on their criminal ventures, including through filing false immigration applications and arranging for foreign government officials to refuse to accept deportees from returning to their countries of origin so that the United States will be unable to remove them.

     d.    Members and associates of the Mirzoyan-Terdjanian Organization and their co-conspirators employed a variety of techniques to hide their illegal earnings from law enforcement, including by holding assets in the names of aliases and phony companies, using several million dollars of chips from a Las Vegas casino to disguise the funds and transfer money

between each other, holding large quantities of cash, and transferring funds to Armenia through bulk cash smuggling and informal money transfer networks.

       e.   Members and associates of the Mirzoyan-Terdjanian Organization and their co-conspirators also took steps to disguise their income so that it appeared that they were employees of legitimate companies.  For example, MIRZOYAN, YEPISKOPOSYAN, MURADKHANYAN and others laundered criminal funds through medical laboratories owned by POGOSIAN so that it would appear that they were simply consultants to POGOSIAN's companies.

       f.   Members and associates of the Mirzoyan-Terdjanian Organization and their co-conspirators relied on extortion to obtain money from their criminal partners.  For example, in May 2009, TERDJANIAN, STEPANIAN and others extorted a member of another criminal organization over a debt that individual owed to TERDJANIAN.  On or about May 29, 2009 TERDJANIAN pulled a knife on the individual during a "sit down" over the debt at a Brighton Beach restaurant and threatened to disembowel the individual if the debt was not paid.

       g.   Members and associates of the Mirzoyan-Terdjanian Organization used the backing of Vor KAZARIAN to resolve disputes with other criminals in the United States and overseas.  For example, in or about December 2006, KAZARIAN traveled to New York to assist AMROYAN and an associate of

AMROYAN's when a promoter of an overseas investment fraud scheme, who was himself represented by a Vor, sought to collect $200,000 from AMROYAN's associate.   After speaking to the other Vor, KAZARIAN decreed that the $200,000 that AMROYAN's associate was deemed to owe would be erased.

       h.   Members and associates of the Mirzoyan-Terdjanian Organization also used extortion and threats of violence to insure that the hierarchy of the Organization was maintained and that appropriate respect was afforded to Vor KAZARIAN.   For example, after KAZARIAN assisted AMROYAN in or about December 2006 and January 2007 in connection with the $200,000 debt, KAZARIAN demanded a fee of approximately $100,000 for his service.   AMROYAN did not pay KAZARIAN, pleading poverty, and as a result was ostracized by other members and associates of the Mirzoyan-Terdjanian Organization.   In or about August 2010, KAZARIAN directed AVETISYAN to seize a boat that AMROYAN had purchased despite his failure to repay KAZARIAN.   In another example, in August 2010 KAZARIAN and AVETISYAN threatened to sodomize and kill an associate who had failed to show proper respect to KAZARIAN by repeatedly calling KAZARIAN while drunk.

<u>The Racketeering Conspiracy</u>

      13.   From at least in or about 2006, up to and including on or about the date of this indictment, ARMEN KAZARIAN, a/k/a "Pzo," a/k/a "Qerop," DAVIT MIRZOYAN, ROBERT

TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a ""Robert Vovk," ALEKSANDR AVETISYAN, a/k/a "Vladimir Arushunyan," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN, a/k/a "Butania," VAGAN STEPANIAN, VARUJAN AMROYAN, a/k/a "Varush," JACOB POGOSIAN, KAREN SIMONIAN, VARTAN BOYADZHYAN, a/k/a "Levon Papikan," a/k/a "Ararat Bedrousian," ARTUR MANASARIAN, GOURGEN MIRIMANIAN, a/k/a "Edo," MANUK MURADKHANYAN, a/k/a "Manch," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE KHATCHATURYAN, GAGIK KYURKCHYAN, ANNA ZAICHIK, ARON CHERVIN, and KAREN AHARONIAN, the defendants, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 12 above, namely, the Mirzoyan-Terdjanian Organization, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 1962(c), to wit, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), and as set forth below in paragraph 14.  MIRZOYAN, TERDJANIAN, KAZARIAN, AVETISYAN, BAGHOUMIAN, SATAMYAN, YEPISKOPOSYAN, STEPANIAN, AMROYAN, POGOSIAN, SIMONIAN, BOYADZHYAN, MANASARIAN, MIRIMANIAN,

MURADKHANYAN, SOGHOYAN, TAKVORYAN, KHATCHATURYAN, KYURKCHYAN, ZAICHIK, CHERVIN, and AHARONIAN, the defendants each agreed that s/he or a co-conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

<u>The Pattern of Racketeering</u>

14.   The pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), through which ARMEN KAZARIAN, a/k/a "Pzo," a/k/a "Qerop," DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," ALEKSANDR AVETISYAN, a/k/a "Vladimir Arushunyan," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN, a/k/a "Butania," VAGAN STEPANIAN, VARUJAN AMROYAN, a/k/a "Varush," JACOB POGOSIAN, KAREN SIMONIAN, VARTAN BOYADZHYAN, a/k/a "Levon Papikan," a/k/a "Ararat Bedrousian," ARTUR MANASARIAN, GOURGEN MIRIMANIAN, a/k/a "Edo," MANUK MURADKHANYAN, a/k/a "Manch," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE KHATCHATURYAN, GAGIK KYURKCHYAN, ANNA ZAICHIK, ARON CHERVIN, and KAREN AHARONIAN, the defendants, and their co-conspirators agreed to conduct and participate in the conduct of the affairs of the enterprise consisted of multiple acts indictable under the following federal statutes:

(a) Mail fraud, in violation of Title 18, United States Code, Section 1341;

(b) Wire fraud, in violation of Title 18, United States Code, Section 1343;

(c) Bank fraud, in violation of Title 18, United States Code, Section 1344;

(d) Identity theft, in violation of Title 18, United States Code, Section 1028;

(e) Money laundering, in violation of Title 18, United States Code, Sections 1956 and 1957;

(f) Extortion, in violation of Title 18, United States Code, Sections 894 and 1951, and New York State Penal Law, Section 155.40;

(g) Distribution of contraband (untaxed) cigarettes, in violation of Title 18, United States Code, Section 2341;

(h) Immigration fraud, in violation of Title 18, United States Code, Section 1546; and

(i) Access device fraud, in violation of Title 18, United States Code, Section 1029.

(Title 18, United States Code, Section 1962(d).)

COUNT TWO

(Health Care Fraud Conspiracy)

The Grand Jury further alleges:

15.    The allegations set forth in paragraphs 1 through 10 of this Indictment are re-alleged as if fully set forth herein.

MEDICARE BACKGROUND

16.    The Medicare program was established by the Social Security Act of 1965 to provide medical services and supplies to qualifying aged, blind, and disabled individuals (i.e., the "beneficiaries").  The Medicare Part B program is a federally funded insurance program that provided supplementary Medicare insurance benefits for individuals aged sixty-five or older and certain individuals who are disabled.  Under this program, Medicare pays a large percentage of the cost for medical services provided to beneficiaries for which the health care provider had submitted a claim. In order to bill the Medicare program, a health care provider must complete an enrollment application and be approved to participate in the program.  Once approved, the provider is able to submit claims for payment for eligible services rendered to beneficiaries.  The claim form submitted by the Medicare provider requires the provider to state a diagnosis of the patient's condition and identify the service or services rendered.

17.   The Medicare program is designed to pay health care providers promptly for billed services without, in most instances, requiring any verification that the billed services were actually performed prior to issuing payments.  Suspicious billing - such as bills for services not typically performed by a physician of a particular specialty, or bills for patients who reside a great distance from the Medicare provider - is typically investigated only after payments for services are made.

18.   When a Medicare claim is submitted by a Medicare provider under the name of a particular beneficiary, the individual beneficiary is not informed that a claim has been submitted until after it is processed and in most cases paid, when the individual receives by mail an Explanation of Benefits, or "EOB."  Moreover, once a Medicare provider is approved, Medicare payments to the provider can begin immediately, including retroactive payments for services rendered before the approval.  Within the first few months following approval, therefore, a Medicare provider may have received hundreds of thousands of dollars from Medicare without any claim having been scrutinized, and with the purported beneficiaries of the medical services unaware of the medical bills.

<u>THE SCHEME TO DEFRAUD MEDICARE</u>

19.   From at least in or about 2006 up through and including the date of this indictment, members and associates of

16

the Mirzoyan-Terdjanian Organization, together with others known and unknown (the "Conspirators"), participated in a large-scale, nationwide scheme to defraud Medicare. The scheme involved at least approximately 118 fraudulent Medicare providers, located in at least approximately 25 states, that submitted fraudulent bills to Medicare of at least approximately $100 million and that received at least approximately $35.7 million from Medicare.

20. To effectuate the fraud scheme, the Conspirators created dozens of "phantom clinics" - health care providers that existed only on paper, that had no doctors, and that treated no patients. To create a "phantom clinic," the Conspirators typically engaged in the following tasks:

a. First, the Conspirators would steal the identity of a doctor - in particular, the doctor's date of birth, social security number, medical license number, and other identifying information.

b. Second, the Conspirators would file paperwork to incorporate a business entity associated with the stolen identity of the doctor, without the knowledge or approval of the doctor. The Conspirators would then file an application with Medicare, claiming that the company incorporated using the stolen doctor's identity was a real health care clinic. Routinely the purported Medicare provider's business address listed on the Medicare

17

application was an empty storefront or a UPS Store, a Mailboxes Etc., or similar service.

      c.   Third, the Conspirators would open bank accounts for the clinic they had established using the stolen doctor's identity in order to receive payments from Medicare.  The bank accounts were typically opened by individuals using other fictitious or stolen identities, or using the names of immigrants from Armenia and elsewhere who would leave the United States after opening the bank accounts.

      d.   Fourth, the Conspirators would fraudulently obtain thousands of identities – names, addresses, social security numbers, and dates of birth – of legitimate Medicare recipients. Among the beneficiaries whose identities were stolen and used by the Conspirators to defraud Medicare were numerous individuals living in the Southern District of New York who were patients of Orange Regional Medical Center, in Orange County, New York.

      21.  With these steps completed, the Conspirators were able to defraud Medicare.  For each phantom clinic, the Conspirators submitted bills to Medicare for services allegedly rendered by a doctor (whose identity had been stolen) to numerous patients (whose identities had similarly been stolen).  The bills were entirely fictitious.  The beneficiaries never received the services and no doctor performed them.  In fact, in some cases

the beneficiaries were deceased at the time various medical services had supposedly been rendered.

22. As set in paragraph 17 of this indictment, Medicare typically pays claims prior to scrutinizing their validity. Accordingly, in many cases, Medicare wired hundreds of thousands of dollars for the fictitious treatments into the bank accounts associated with the phantom clinics. The Conspirators then typically transferred the Medicare proceeds from the bank accounts where the funds were initially received to other bank accounts, and in some cases then still other bank accounts, where the funds were then withdrawn as cash, issued as checks to individuals who cashed them at check cashing stores, or transferred to other untraceable locations. In several cases, funds were transferred to Armenia by a courier carrying tens of thousands of dollars in cash, and through other means.

23. In many cases, Medicare ultimately detected the fraudulent nature of the phantom clinics, though in some cases only after paying out hundreds of thousands of dollars worth of claims. Detection was possible in part because the Conspirators billed Medicare for services in a highly suspicious manner, including as follows:

a. The services billed were often not of the kind performed by the doctor whose identity had been used to create the Medicare provider. For example:

19

i.   the Conspirators used the identity of an ear, nose, and throat doctor to create a phantom clinic, and billed the Medicare program claiming the doctor performed pregnancy ultrasounds;

ii.  the Conspirators used the identity of a forensic pathologist – i.e., a doctor who performs autopsies – to create a phantom clinic, and billed the Medicare program for office visits;

iii. the Conspirators used the identity of an obstetrician to create a phantom clinic, and billed the Medicare program claiming the doctor performed allergy skin tests;

iv.  the Conspirators used the identity of a dermatologist to create a phantom clinic, and billed the Medicare program claiming the doctor performed heart tests;

v.   the Conspirators used the identity of an opthalmologist to create a phantom clinic, and billed the Medicare program claiming the doctor performed tests of the bladder; and

vi.  the Conspirators used the identity of a psychiatrist to create a phantom clinic, and billed the Medicare program claiming the doctor performed MRIs of upper extremities.

b.   Several of the same rare (and often expensive) medical services were billed by different phantom clinics set up by the Conspirators no matter what the true

20

specialty of the doctor whose identity had been stolen.   For
example:

       i.   the Conspirators used phantom clinics
created with the stolen identities of doctors of widely varying
practices and billed Medicare for sleep studies (expensive tests
designed to identify sleep disorders), claiming variously that
the studies were performed by a general surgeon, dermatologist,
internist, neurological surgeon, otolarynologist (ear, nose, and
throat doctor), and family practitioner.

       ii.  the Conspirators used phantom clinics
created with the stolen identities of doctors of widely varying
practices and billed Medicare for nerve tests, claiming variously
that the tests were performed by a pathologist, obstetrician,
internist, gastroenterologist, and psychiatrist.

       iii. the Conspirators used phantom clinics
created with the stolen identities of doctors of widely varying
practices and billed Medicare for electromyography testing of the
anus, claiming variously that the tests were performed by a
pathologist, internist, otolarynologist (ear, nose, and throat
doctor), family practitioner, and psychiatrist.

      24.  The success of the criminal venture did not depend
on the success of any particular phantom clinic.   In contrast,
the Conspirators recognized that each fraudulent clinic had a
"shelf life" of only several months before it would be detected.

Aware that detection was inevitable, the Conspirators took steps to insure that the names on phantom clinic bank accounts were stolen identities or names of individuals who had left the United States and that the money Medicare had deposited into the bank accounts had been transferred and withdrawn. Additionally, the Conspirators regularly opened new phantom clinics around the United States to insure a ready pipeline of bogus Medicare providers with which to commit fraud when a particular clinic was shut down. Some of the clinics opened using stolen doctor's identities included the following: a clinic in New York, New York in the name of a doctor victim; BLG Group, Inc. (Dallas, Texas); AMLO Group (Denver, Colorado); CAG Group (Hagerstown, Maryland); Galaxy Medical (Apple Valley, California); GMF Group (Las Vegas, Nevada); Healthy Future (Mobile, Alabama); Healthy Steps Inc. (Albuquerque, New Mexico); KC Result Inc. (Lexington, Kentucky); and Victory Care (San Bernadino, California).

<u>STATUTORY ALLEGATION</u>

25.   From in or about 2006 through in or about the date of this indictment, in the Southern District of New York and elsewhere, ARMEN KAZARIAN, a/k/a "Pzo," a/k/a "Qerop," DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," ALEKSANDR AVETISYAN, a/k/a "Vladimir Arushanyan," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN, a/k/a "Butania," JACOB POGOSIAN,

KAREN SIMONIAN, VARTAN BOYADZHYAN, a/k/a "Levon Papikan," a/k/a "Ararat Bedrousian," GOURGEN MIRIMANIAN, a/k/a "Edo," MANUK MURADKHANYAN, a/k/a "Manch," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE KHATCHATURYAN, GAGIK KYURKCHYAN, and ANNA ZAICHIK, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Title 18, United States Code, Section 1347.

26. It was part and an object of the conspiracy that ARMEN KAZARIAN, a/k/a "Pzo," a/k/a "Qerop," DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," ALEKSANDR AVETISYAN, a/k/a "Vladimir Arushanyan," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN, a/k/a "Butania," JACOB POGOSIAN, KAREN SIMONIAN, VARTAN BOYADZHYAN, a/k/a "Levon Papikan," a/k/a "Ararat Bedrousian," GOURGEN MIRIMANIAN, a/k/a "Edo," MANUK MURADKHANYAN, a/k/a "Manch," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE KHATCHATURYAN, GAGIK KYURKCHYAN, and ANNA ZAICHIK, the defendants, and others known and unknown, unlawfully, willfully and knowingly, executed and attempted to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and

23

control of a health care benefit program, in violation of Title

18, United States Code, Section 1347.

(Title 18, United States Code, Section 1349).

## COUNT THREE

(Conspiracy to Commit Bank Fraud)

The Grand Jury further charges:

27.   The allegations contained in paragraphs 1 through

12 and 16 through 24 are realleged and incorporated herein by

reference.

28.   From in or about July 2006 through and including

in or about the date of this Indictment, in the Southern District

of New York and elsewhere, DAVIT MIRZOYAN, ROBERT TERDJANIAN,

a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," ARTUR

YEPISKOPOSYAN, a/k/a "Butania," VARTAN BOYADZHYAN, a/k/a "Levon

Papikan," a/k/a "Ararat Bedrousian," GOURGEN MIRIMANIAN, a/k/a

"Edo," GAGIK KYURKCHYAN, ANNA ZAICHIK, ARMAN GRIGORIAN, ANNA

TERMARTIROSYAN, and RAFIK TERDJANIAN, the defendants, and others

known and unknown, unlawfully, willfully, and knowingly did

combine, conspire, confederate, and agree together and with each

other, to commit offenses against the United States, to wit, to

violate Title 18, United States Code, Section 1344.

29.   It was part and an object of the conspiracy that

DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg

Kamarine," a/k/a "Robert Vovk," ARTUR YEPISKOPOSYAN, a/k/a

"Butania," VARTAN BOYADZHYAN, a/k/a "Levon Papikan," a/k/a

"Ararat Bedrousian," GOURGEN MIRIMANIAN, a/k/a "Edo," GAGIK

KYURKCHYAN, ANNA ZAICHIK, ARMAN GRIGORIAN, ANNA TERMARTIROSYAN,

and RAFIK TERDJANIAN, the defendants, and others known and

unknown, unlawfully, willfully and knowingly, did execute and

attempt to execute a scheme and artifice to defraud a financial

institution, the deposits of which were insured by the Federal

Deposit Insurance Corporation, and to obtain moneys, funds,

credits, assets, securities and other property owned by, and

under the custody and control of a financial institution, by

means of false and fraudulent pretenses, representations and

promises, in violation of Title 18, United States Code, Section

1344.

(Title 18, United States Code, Section 1349).

### COUNT FOUR

(Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

30.   The allegations contained in paragraphs 1 through

12 and 16 through 24 are realleged and incorporated herein by

reference.

31.   From in or about 2006, up through and including in

or about the date of this Indictment, in the Southern District of

New York and elsewhere, DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a

"Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," ARTUR

YEPISKOPOSYAN, a/k/a "Butania," HERAYER BAGHOUMIAN, a/k/a

"Vazken," POGOS SATAMYAN, JACOB POGOSIAN, MANUK MURADKHANYAN,

a/k/a "Manch," KAREN SIMONIAN, ARMAN GRIGORIAN, KAREN MARKOSIAN,

ANNA TERMARTIROSYAN and RAFIK TERDJANIAN, the defendants, and

others known and unknown, unlawfully, willfully, and knowingly

did combine, conspire, confederate, and agree together and with

each other to commit offenses against the United States, to wit,

to violate Sections 1956(a)(i)(B)(i) and  1957 of Title 18,

United States Code.

      32.  It was a part and an object of the conspiracy that

DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg

Kamarine," a/k/a "Robert Vovk," ARTUR YEPISKOPOSYAN, a/k/a

"Butania," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN,

JACOB POGOSIAN, MANUK MURADKHANYAN, a/k/a "Manch," KAREN

SIMONIAN, ARMAN GRIGORIAN, KAREN MARKOSIAN, ANNA TERMARTIROSYAN

and RAFIK TERDJANIAN, the defendants, and others known and

unknown, unknown, unlawfully, willfully, and knowingly would and

did conduct and attempt to conduct financial transactions

involving the proceeds of specified unlawful activity, to wit,

health care fraud, knowing that the property involved in such

financial transactions represented the proceeds of some form of

unlawful activity, and knowing that such financial transactions

were designed in whole and in part to conceal and disguise the

nature, location, source, ownership and control of the proceeds

of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

33.   It was further a part and an object of the conspiracy that DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," ARTUR YEPISKOPOSYAN, a/k/a "Butania," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, JACOB POGOSIAN, MANUK MURADKHANYAN, a/k/a "Manch," KAREN SIMONIAN, ARMAN GRIGORIAN, KAREN MARKOSIAN, ANNA TERMARTIROSYAN and RAFIK TERDJANIAN, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, would and did engage in and attempt to engage in monetary transactions, as that term is defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property that was of a value greater than $10,000, to wit, the payment by check of funds in excess of $10,000 from bank accounts that received Medicare funds to other bank accounts controlled by the defendants, such property having been derived from a specified unlawful activity, to wit, proceeds from health care fraud, in violation of Title 18, United States Code, Section 1957.

(Title 18, United States Code, Section 1956(h)).

COUNT FIVE

(Conspiracy to Commit Fraud in Connection with Identity Theft)

The Grand Jury further charges:

34. The allegations contained in paragraphs 1 through 12 and 16 through 24 are realleged and incorporated herein by reference.

35. From in or about 2005, up through and including on or about the date of this Indictment, in the Southern District of New York and elsewhere, DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN, a/k/a "Butania," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE KHATCHATURYAN, and ANNA ZAICHIK, the defendants, together with others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated, and agreed to violate the laws of the United States, to wit, to violate Title 18, United States Code, Section 1028.

36. It was a part and an object of said conspiracy that DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN, a/k/a "Butania," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE KHATCHATURYAN, and ANNA ZAICHIK, the defendants, and others known and unknown, would and did unlawfully, willfully, and knowingly transfer, possess, and

28

use, without lawful authority, means of identification of other persons with the intent to commit, and to aid and abet, and in connection with, an unlawful activity that constituted a violation of Federal law, and that constituted a felony under an applicable State and local law, to wit, the defendants used the names, Social Security numbers, and dates of birth of doctors to create purported Medicare providers that were unknown to and unauthorized by the doctors, in violation of Title 18, United States Code, Section 1028(a)(7).

37. It was further a part and an object of said conspiracy that DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN, a/k/a "Butania," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE KHATCHATURYAN, and ANNA ZAICHIK, the defendants, and others known and unknown, would and did unlawfully, willfully, and knowingly transfer, possess, and use, without lawful authority, means of identification of other persons with the intent to commit, and to aid and abet, and in connection with, an unlawful activity that constituted a violation of Federal law, and that constituted a felony under an applicable State and local law, to wit, the defendants used the names and Social Security numbers of Medicare beneficiaries in claims for payment to the Medicare program for purported services rendered to the beneficiaries, which services

were not provided, and which use was unknown to and unauthorized by the beneficiaries, in violation of Title 18 United States Code, Section 1028(a)(7).

OVERT ACTS

38.  In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, was committed in the Southern District of New York and elsewhere:

a.  In or around 2005, the names and personal data of approximately 2,900 patients of an Orange County, New York medical facility were fraudulently obtained by a co-conspirator not named as a defendant herein.

b.  On or about December 10, 2009, DAVIT MIRZOYAN, the defendant mailed ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," the defendant, the name and biographical information of a doctor practicing medicine in Manhattan, New York to use for a fraudulent medical clinic.

(Title 18, United States Code, Section 371.)

COUNT SIX

(Conspiracy to Commit Credit Card Fraud)

The Grand Jury further charges:

39.  From at least in or about 2007, through on or about the date of this indictment, in the Southern District of New York and elsewhere, DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," ALEKSANDR

30

AVETISYAN, a/k/a "Vladimir Arushunyan," VAGAN STEPANIAN, VARUJAN
AMROYAN, a/k/a "Varush," KAREN AHARONIAN, and SAMVEL HAKOPYAN,
the defendants, and others known and unknown, unlawfully,
willfully and knowingly did combine, conspire, confederate and
agree together and with each other to commit offenses against the
United States, to wit, to violate Title 18, United States Code,
Section 1028.

40.   It was a part and object of the conspiracy that
DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg
Kamarine," a/k/a "Robert Vovk," ALEKSANDR AVETISYAN, a/k/a
"Vladimir Arushunyan," VAGAN STEPANIAN, VARUJAN AMROYAN, a/k/a
"Varush," KAREN AHARONIAN, and SAMVEL HAKOPYAN, the defendants,
unlawfully, willfully and knowingly, and with intent to defraud,
in an offense affecting interstate and foreign commerce, did
possess fifteen and more devices which were counterfeit and
unauthorized access devices, to wit, the defendants manufactured
and obtained stolen and fraudulent credit cards and transferred
them among each other, in violation of Title 18, United States
Code, Section 1029(a)(3).

<u>Overt Acts</u>

41.   In furtherance of said conspiracy and to effect
its illegal object, the following overt acts, among others, were
committed in the Southern District of New York and elsewhere:

a.    On or about August 26, 2009, ROBERT TERDJANIAN,

a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," the defendant, placed a telephone call to SAMVEL HAKOPYAN, the defendant, during which telephone conversation, in substance and in part, they discussed that TERDJANIAN possessed approximately 50 counterfeit credit cards that had been provided by HAKOPYAN.

b.   In or about August 2007, VARUJAN AMOROYAN, a/k/a "Varush," and co-conspirators not named as defendants herein drove through the Southern District of New York to Deerfield, Illinois, in order to possess and use fraudulent credit cards.

(Title 18, United States Code, Section 1029(b)(2).)

<u>COUNT SEVEN</u>

(Conspiracy to Commit Naturalization Fraud)

The Grand Jury further charges:

42.   From at least in or about January 2010, up to and including at least in or about May 2010, in the Southern District of New York and elsewhere, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," VAGAN STEPANIAN and MICHAEL DOBRUSHIN, the defendants, and others known and unknown, unlawfully, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, visa fraud, in violation of Title 18, United States Code, Section 1546, and making false statements, in violation of Title 18, United States Code, Section 1001.

43.   It was a part and an object of the conspiracy that
ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a
"Robert Vovk," VAGAN STEPANIAN and MICHAEL DOBRUSHIN, the
defendants, and others known and unknown, would and did
unlawfully, willfully and knowingly make under oath, and as
permitted under penalty of perjury under section 1746 of title
28, United States Code, did subscribe as true, false statements
with respect to material facts in applications, affidavits, and
other documents required by the immigration laws and regulations
prescribed thereunder, and did present such applications,
affidavits, and other documents which contained such false
statements and which failed to contain any reasonable basis in
law and fact, in violation of Title 18, United States Code,
Section 1546.

44.   It was further a part and an object of the
conspiracy that MICHAEL DOBRUSHIN, ROBERT TERDJANIAN, a/k/a
"Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk" and VAGAN
STEPANIAN, the defendants, and others known and unknown, would
and did unlawfully, willfully and knowingly, in a matter within
the jurisdiction of the executive branch of the Government of the
United States, falsify, conceal, and cover up by trick, scheme,
and device material facts, and make materially false, fictitious,
and fraudulent statements and representations, and make and use
any false writing and document knowing the same to contain any

33

materially false, fictitious, and fraudulent statement and entry, in violation of Title 18, United States Code, Section 1001.

Overt Acts

45.   In furtherance of said conspiracy and to effect its illegal objects, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In support of an application reviewed by an office of the United States Citizenship and Immigration Services ("USCIS"), MICHAEL DOBRUSHIN, the defendant, stated falsely in a letter dated January 21, 2010, that his company, Abulette PRN, Inc., was involved in the "organizing, promoting and producing" of a "variety of concert programs."

b.   In support of an application reviewed by an office of the USCIS, MICHAEL DOBRUSHIN, the defendant, provided a letter from a guild of musical artists located in New York, New York.

(Title 18, United States Code, Section 371.)

Forfeiture Allegation As to Count One

(Racketeering Offense)

46.   The allegations contained in Count One of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1963, and Title 28, United States Code, Section 2461(c).

47.   Pursuant to Rule 32.2(a), Fed. R. Crim. P. ARMEN KAZARIAN, a/k/a "Pzo," a/k/a "Qerop," DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," ALEKSANDR AVETISYAN, a/k/a "Vladimir Arushanyam," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN, a/k/a "Butania," VAGAN STEPANIAN, VARUJAN AMROYAN, a/k/a "Varush," JACOB POGOSIAN, KAREN SIMONIAN, VARTAN BOYADZHYAN, a/k/a "Levon Papikan," a/k/a "Ararat Bedrousian," ARTUR MANASARIAN, GOURGEN MIRIMANIAN, a/k/a "Edo," MANUK MURADKHANYAN, a/k/a "Manch," LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE KHATCHATURYAN, GAGIK KYURKCHYAN, ANNA ZAICHIK, ARON CHERVIN, and KAREN AHARONIAN, the defendants, are hereby notified that, upon conviction of the violation of Title 18, United States Code, Section 1962, as charged in Count One of this Indictment, the defendants shall forfeit, pursuant to Title 18, United States Code, Section 1963:

a.   all interests acquired and maintained in violation of Title 18, United States Code, Section 1962;

b.   all interests in, securities of, claims against, and property and contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

c.   all property constituting and derived from
proceeds obtained, directly and indirectly, from racketeering
activity in violation of Title 18, United States Code, Section
1962.

48.   The property subject to forfeiture to the United
States pursuant to Title 18, United States Code, Section
1963(a)(1), (a)(2), and (a)(3), includes, but is not limited at
least $25 million which represents the total of the interests
acquired and the gross proceeds obtained through the violation of
Title 18, United States Code, Section 1962, and the following
specific property which constitutes and is derived from proceeds
obtained, directly and indirectly, from racketeering activity in
violation of Title 18, United States Code, Section 1962:

a.   1022 E. Magnolia Blvd, Burbank, CA.

b.   1517 Avenida Sevilla, Palm Springs, CA.

c.   8101 W. Flamingo Drive, Unit 2102, Las Vegas, NV.

d.   8101 W. Flamingo Drive, Unit 2159, Las Vegas, NV.

e.   36 Lake Drive, N. Brunswick, NJ.

f.   345 Pioneer Drive, Unit 102, Glendale, CA.

g.   1605 Winona Blvd, Apt. 203, Los Angeles, CA.

h.   213 W. Kenneth Road, Glendale, CA.

i.   8101 W. Flamingo Road, Unit 1032, Las Vegas,

36

NV.

j.   Parcel of Land, Parcel # 280-00102-000 (Lot 35, Block: 3 Oneida First), Sharpe County, AR, in the name of Davit Mirzoyan.

k.   Parcel of Land, Parcel # 314-00097-000 (Lot:20 Block: 3 Thunderbird First), Sharpe County, AR, in the name of Davit Mirzoyan.

l.   2924 Rain Lily Court, Las Vegas, NV.

m.   5137 Stansbury Avenue, Sherman Oaks, CA.

n.   2007 Maserati, Vehicle Identification Number ZAMCE39A070026847.

o.   2006 Jaguar XJ8, Vehicle Identification Number SAJWA71B56SG50332.

p.   Parcel of Land, Parcel # 22801-070-069, Campsite Lot #403, Section E5, Eagle Lake Covington Township, Lackawanna County, PA.

49.   Pursuant to Title 18, United States Code, Section 1963(m) and Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), ARMEN KAZARIAN, a/k/a "Pzo," a/k/a "Qerop," DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," ALEKSANDR AVETISYAN, a/k/a "Vladimir Arushanyam," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN, a/k/a "Butania," VAGAN STEPANIAN, VARUJAN AMROYAN,

37

a/k/a "Varush," JACOB POGOSIAN, KAREN SIMONIAN, VARTAN
BOYADZHYAN, a/k/a "Levon Papikan," a/k/a "Ararat Bedrousian,"
ARTUR MANASARIAN, GOURGEN MIRIMANIAN, a/k/a "Edo," MANUK
MURADKHANYAN, a/k/a "Manch," LIANA SOGHOYAN, TIKRAN TAKVORYAN,
GAYANE KHATCHATURYAN, GAGIK KYURKCHYAN, ANNA ZAICHIK, ARON
CHERVIN, and KAREN AHARONIAN, a/k/a "Karen," the defendants,
shall forfeit substitute property up to the value of the property
described in the previous paragraph if that property, as a result
of any act or omission of the defendants:

       a.   cannot be located upon the exercise of due
diligence;

       b.   has been transferred or sold to, or deposited
with, a third party;

       c.   has been placed beyond the jurisdiction of
this Court;

       d.   has been substantially diminished in value;
or

       e.   has been commingled with other property which
cannot be divided without difficulty.

       50.  The above-named defendants are jointly and
severally liable for the forfeiture allegations alleged above.

(All in accordance with Title 18, United States Code, Section
1963; Title 28, United States Code, Section 2461(c); and Rule
      32.2(a), Federal Rules of Criminal Procedure.)

### Substitute Asset Provision

51.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the said defendants up to the value of the above forfeitable property, including but not limited to the following:

a.   1022 E. Magnolia Blvd, Burbank, CA.

b.   1517 Avenida Sevilla, Palm Springs, CA.

c.   8101 W. Flamingo Drive, Unit 2102, Las Vegas, NV.

d.   8101 W. Flamingo Drive, Unit 2159, Las Vegas,

39

NV.

    e.   36 Lake Drive, N. Brunswick, NJ.

    f.   345 Pioneer Drive, Unit 102, Glendale, CA.

    g.   1605 Winona Blvd, Apt. 203, Los Angeles, CA.

    h.   213 W. Kenneth Road, Glendale, CA.

    i.   8101 W. Flamingo Road, Unit 1032, Las Vegas, NV.

    j.   Parcel of Land, Parcel # 280-00102-000 (Lot 35, Block: 3 Oneida First), Sharpe County, AR, in the name of Davit Mirzoyan.

    k.   Parcel of Land, Parcel # 314-00097-000 (Lot:20 Block: 3 Thunderbird First), Sharpe County, AR, in the name of Davit Mirzoyan.

    l.   2924 Rain Lily Court, Las Vegas, NV.

    m.   5137 Stansbury Avenue, Sherman Oaks, CA.

    n.   Parcel of Land, Parcel # 22801-070-069, Campsite Lot #403, Section E5, Eagle Lake Covington Township, Lackawanna County, PA.

(Title 18, United States Code, Section 1963; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

## Forfeiture Allegation As to Count Two

(Health Care Fraud Conspiracy)

52.  As a result of committing the health care fraud conspiracy offense charged in Count Two of this Indictment, in

violation of Title 18, United States Code, Section 1349, DAVIT
MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a, "Oleg
Kamarine," a/k/a "Robert Vovk," ARMEN KAZARIAN, a/k/a "Pzo,"
a/k/a "Qerop," ALEKSANDR AVETISYAN, a/k/a "Vladimir Arushanyam,"
HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR
YEPISKOPOSYAN, a/k/a "Butania," VAGAN STEPANIAN, VARUJAN AMROYAN,
a/k/a "Varush," JACOB POGOSIAN, KAREN SIMONIAN, VARTAN
BOYADZHYAN, a/k/a "Levon Papikan," a/k/a "Ararat Bedrousian,"
ARTUR MANASARIAN, GOURGEN MIRIMANIAN, a/k/a "Edo," MANUK
MURADKHANYAN, a/k/a "Manch," LIANA SOGHOYAN, TIKRAN TAKVORYAN,
GAYANE KHATCHATURYAN, GAGIK KYURKCHYAN, and ANNA ZAICHIK, the
defendants, pursuant to Title 18, United States Code, Section
982(a)(7), shall forfeit all property, real and personal, that
constitutes or is derived, directly and indirectly, from gross
proceeds traceable to the commission of the offense charged in
Count Two of this Indictment, including but not limited to the
following:

     a.   At least $37 million in United States
currency, in that such sum in aggregate is
property representing the amount of proceeds
obtained as a result of the offense.

     b.   1022 E. Magnolia Blvd, Burbank, CA.

     c.   1517 Avenida Sevilla, Palm Springs, CA.

     d.   8101 W. Flamingo Drive, Unit 2102, Las Vegas,

NV.

e.   8101 W. Flamingo Drive, Unit 2159, Las Vegas,
     NV.

f.   345 Pioneer Drive, Unit 102, Glendale, CA.

g.   1605 Winona Blvd, Apt. 203, Los Angeles, CA.

h.   213 W. Kenneth Road, Glendale, CA.

i.   8101 W. Flamingo Road, Unit 1032, Las Vegas,
     NV.

j.   Parcel of Land, Parcel # 280-00102-000 (Lot
     35, Block: 3 Oneida First), Sharpe County,
     AR, in the name of Davit Mirzoyan.

k.   Parcel of Land, Parcel # 314-00097-000
     (Lot:20 Block: 3 Thunderbird First), Sharpe
     County, AR, in the name of Davit Mirzoyan.

l.   2924 Rain Lily Court, Las Vegas, NV.

m.   5137 Stansbury Avenue, Sherman Oaks, CA.

n.   2007 Maserati, Vehicle Identification Number
     ZAMCE39A070026847.

o.   Parcel of Land, Parcel # 22801-070-069,
     Campsite Lot #403, Section E5, Eagle Lake
     Covington Township, Lackawanna County, PA.

## Substitute Asset Provision

53.  If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the said defendants up to the value of the forfeitable property, including but not limited to the following:

a.  1022 E. Magnolia Blvd, Burbank, CA.

b.  1517 Avenida Sevilla, Palm Springs, CA.

c.  8101 W. Flamingo Drive, Unit 2102, Las Vegas, NV.

d.  8101 W. Flamingo Drive, Unit 2159, Las Vegas, NV.

43

e.   36 Lake Drive, N. Brunswick, NJ.

f.   345 Pioneer Drive, Unit 102, Glendale, CA.

g.   1605 Winona Blvd, Apt. 203, Los Angeles, CA.

h.   213 W. Kenneth Road, Glendale, CA.

i.   8101 W. Flamingo Road, Unit 1032, Las Vegas, NV.

j.   Parcel of Land, Parcel # 280-00102-000 (Lot 35, Block: 3 Oneida First), Sharpe County, AR, in the name of Davit Mirzoyan.

k.   Parcel of Land, Parcel # 314-00097-000 (Lot:20 Block: 3 Thunderbird First), Sharpe County, AR, in the name of Davit Mirzoyan.

l.   2924 Rain Lily Court, Las Vegas, NV.

m.   5137 Stansbury Avenue, Sherman Oaks, CA.

n.   Parcel of Land, Parcel # 22801-070-069, Campsite Lot #403, Section E5, Eagle Lake Covington Township, Lackawanna County, PA.

(Title 18, United States Code, Section 982; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

## Forfeiture Allegation As To Count Three

### (Bank Fraud Conspiracy)

54.   As a result of committing the bank fraud conspiracy offense charged in Count Three of this Indictment, DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg

Kamarine," a/k/a "Robert Vovk," ARTUR YEPISKOPOSYAN, a/k/a

"Butania," VARTAN BOYADZHYAN, a/k/a "Levon Papikan," a/k/a

"Ararat Bedrousian," GOURGEN MIRIMANIAN, a/k/a "Edo," GAGIK

KYURKCHYAN, ANNA ZAICHIK, ARMAN GRIGORIAN, ANNA TERMARTIROSYAN,

and RAFIK TERDJANIAN, the defendants, shall forfeit to the United

States, pursuant to Title 18, United States Code, Section

982(a)(2)(A), any property constituting, or derived from,

proceeds obtained, directly or indirectly, as a result of the

bank fraud conspiracy offense, including but not limited the

following:

      a.    At least $37 million in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the bank fraud conspiracy offense.

      b.    1605 Winona Blvd, Apt. 203, Los Angeles, CA.

      c.    213 W. Kenneth Road, Glendale, CA.

      d.    8101 W. Flamingo Road, Unit 1032, Las Vegas, NV.

      e.    Parcel of Land, Parcel # 280-00102-000 (Lot 35, Block: 3 Oneida First), Sharpe County, AR, in the name of Davit Mirzoyan.

      f.    Parcel of Land, Parcel # 314-00097-000 (Lot:20 Block: 3 Thunderbird First), Sharpe

County, AR, in the name of Davit Mirzoyan.

g.   420 Riverdale Drive, Glendale, CA.

h.   3126 Chadney Drive, Glendale, CA.

i.   10350 Adrianna Avenue, Las Vegas, NV.

j.   9341 Olympia Falls Avenue, Las Vegas, NV.

k.   2005 Mini-Cooper, Vehicle Identification
     Number WMWRE33475TD94983.

l.   Parcel of Land, Parcel # 22801-070-069,
     Campsite Lot #403, Section E5, Eagle Lake
     Covington Township, Lackawanna County, PA.

<u>Substitute Asset Provision</u>

55.  If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due
diligence;

b.   has been transferred or sold to, or deposited
with, a third party;

c.   has been placed beyond the jurisdiction of the
court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which
cannot be subdivided without difficulty;
it is the intent of the United States, pursuant to Title 18,
United States Code, Section 982(b), Title 21, United States Code,

46

Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the said defendants up to the value of the above forfeitable property, including but not limited to the following:

a.  1605 Winona Blvd, Apt. 203, Los Angeles, CA.

b.  213 W. Kenneth Road, Glendale, CA.

c.  8101 W. Flamingo Road, Unit 1032, Las Vegas, NV.

d.  Parcel of Land, Parcel # 280-00102-000 (Lot 35, Block: 3 Oneida First), Sharpe County, AR, in the name of Davit Mirzoyan.

e.  Parcel of Land, Parcel # 314-00097-000 (Lot:20 Block: 3 Thunderbird First), Sharpe County, AR, in the name of Davit Mirzoyan.

f.  420 Riverdale Drive, Glendale, CA.

g.  3126 Chadney Drive, Glendale, CA.

h.  10350 Adrianna Avenue, Las Vegas, NV.

i.  9341 Olympia Falls Avenue, Las Vegas, NV

j.  Parcel of Land, Parcel # 22801-070-069, Campsite Lot #403, Section E5, Eagle Lake Covington Township, Lackawanna County, PA.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

## Forfeiture Allegation As To Count Four

### (Money Laundering Conspiracy)

56. As a result of committing the money laundering conspiracy offense charged in Count Four of this Indictment, in violation of Title 18, United States Code, Section 1956(h), DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert Vovk," ARTUR YEPISKOPOSYAN, a/k/a "Butania," HERAYER BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, JACOB POGOSIAN, MANUK MURADKHANYAN, a/k/a "Manch," KAREN SIMONIAN, ARMAN GRIGORIAN, KAREN MARKOSIAN, ANNA TERMARTIROSYAN and RAFIK TERDJANIAN, the defendants, pursuant to Title 18, United States Code, 982(a)(1), shall forfeit to the United States of America any property, real and personal, involved in such offense, and any property traceable to such property, including but not limited to the following:

    a.    At least $37 million in United States currency, in that such sum in aggregate is property representing the property involved in the offense, and traceable to such property.

    b.    213 W. Kenneth Road, Glendale, CA.

    c.    8101 W. Flamingo Road, Unit 1032, Las Vegas, NV.

    d.    Parcel of Land, Parcel # 280-00102-000 (Lot

35, Block: 3 Oneida First), Sharpe County,

AR, in the name of Davit Mirzoyan.

e.  Parcel of Land, Parcel # 314-00097-000

(Lot:20 Block: 3 Thunderbird First), Sharpe

County, AR, in the name of Davit Mirzoyan.

f.  3126 Chadney Drive, Glendale, CA.

g.  10350 Adrianna Avenue, Las Vegas, NV.

h.  9341 Olympia Falls Avenue, Las Vegas, NV.

i.  420 Riverdale Drive, Glendale, CA.

j.  Parcel of Land, Shingle Creek Lane, Valley of

Enchantment, CA, in the name of Dianna

Harutyunyan.

k.  2005 Mini-Cooper, Vehicle Identification

Number WMWRE33475TD94983.

l.  Parcel of Land, Parcel # 22801-070-069,

Campsite Lot #403, Section E5, Eagle Lake

Covington Township, Lackawanna County, PA.

<u>Substitute Asset Provision</u>

57.  If any of the above-described forfeitable

property, as a result of any act or omission of the defendants:


a.  cannot be located upon the exercise of due

diligence;

b.  has been transferred or sold to, or deposited

49

with, a third party;

        c.  has been placed beyond the jurisdiction of the court;

        d.  has been substantially diminished in value; or

        e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the said defendants up to the value of the above forfeitable property, including but not limited to the following:

        a.  213 W. Kenneth Road, Glendale, CA.

        b.  8101 W. Flamingo Road, Unit 1032, Las Vegas, NV.

        c.  Parcel of Land, Parcel # 280-00102-000 (Lot 35, Block: 3 Oneida First), Sharpe County, AR, in the name of Davit Mirzoyan.

        d.  Parcel of Land, Parcel # 314-00097-000 (Lot:20 Block: 3 Thunderbird First), Sharpe County, AR, in the name of Davit Mirzoyan.

        e.  3126 Chadney Drive, Glendale, CA.

        f.  10350 Adrianna Avenue, Las Vegas, NV.

        g.  9341 Olympia Falls Avenue, Las Vegas, NV.

    h.    420 Riverdale Drive, Glendale, CA.

    i.    Parcel of Land, Shingle Creek Lane, Valley of

        Enchantment, CA, in the name of Dianna

        Harutyunyan.

    j.    Parcel of Land, Parcel # 22801-070-069,

        Campsite Lot #403, Section E5, Eagle Lake

        Covington Township, Lackawanna County, PA.

(Title 18, United States Code, Section 982;
Title 21, United States Code, Section 853; and Title 28, United
States Code, Section 2461.)

<u>Forfeiture Allegation As To Count Six</u>

(Credit Card Fraud Conspiracy)

58. As the result of committing the access device fraud conspiracy offense, in violation of Title 18, United States Code, Section 371, charged in Count Six of this Indictment, DAVIT MIRZOYAN, ROBERT TERDJANIAN, a/k/a "Robik," a/k/a, "Oleg Kamarine," a/k/a "Robert Vovk," VAGAN STEPANIAN, VARUJAN AMROYAN, a/k/a "Varush," KAREN AHARONIAN, and SAMVEL HAKOPYAN, the defendants, pursuant to Title 18, United States Code, Section 982(a)(2)(B), shall forfeit any and all property constituting, or derived from, proceeds obtained directly or indirectly, as a result of the offense, including but not limited to a sum of United States currency representing the amount of proceeds obtained as a result of the offense, and, pursuant to Title 18, United States Code, Section 1029(c), any personal property used

51

or intended to be used to commit the offense charged in Count Six of this Indictment.

### Substitute Asset Provision

59.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the said defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 982 and 1029; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

### Forfeiture Allegation As To Count Seven

(Naturalization Fraud Conspiracy)

60.   As a result of committing the naturalization fraud conspiracy charged in Count Seven of this Indictment, in

violation of Title 18, United States Code, Section 371, ROBERT
TERDJANIAN, a/k/a "Robik," a/k/a "Oleg Kamarine," a/k/a "Robert
Vovk," VAGAN STEPANIAN and MICHAEL DOBRUSHIN, the defendants
pursuant to Title 18, United States Codes, Section 982(a)(6),
shall forfeit to the United States any conveyance, including any
vessel, vehicle, or aircraft used in the commission of the
offense; and any property real and personal that constitutes, or
is derived from or is traceable to proceeds obtained directly or
indirectly from the commission of the offense; or that is used to
facilitate, or is intended to be used to facilitate, the
commission of the offense.

Substitute Asset Provision

61.   If any of the above-described forfeitable
property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due
diligence;

b. has been transferred or sold to, or deposited
with, a third person;

c. has been placed beyond the jurisdiction of the
Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which
cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18,
United States Code, Section 982(b), Title 21, United States Code,

Section 853(p), and Title 28, United States Code, Section

2461(c), to seek forfeiture of any other property of the said

defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Section 982; Title 21, United
States Code, Section 853; and Title 28, United States Code,
Section 2461.)


_____                _____
FOREPERSON                                 PREET BHARARA
                                           United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

### - v. -

ARMEN KAZARIAN, a/k/a "Pzo," a/k/a "Qerop,"DAVIT MIRZOYAN,ROBERT
TERDJANIAN, a/k/a "Robik, a/k/a "Oleg Kamarine, a/k/a "Robert
Vovk,"ALEKSANDR AVETISYAN,a/k/a "Vladimir Arushunyan," HERAYER
BAGHOUMIAN, a/k/a "Vazken," POGOS SATAMYAN, ARTUR YEPISKOPOSYAN,
a/k/a "Butania," VAGAN STEPANIAN,VARUJAN AMROYAN,a/k/a "Varush,"
JACOB POGOSIAN,KAREN SIMONIAN,VARTAN BOYZADZHYAN, a/k/a "Levon
Papikan," a/k/a "Ararat Bedrousian," ARTUR MANASARIAN,GOURGEN
MIRIMANIAN, a/k/a "Edo," MANUK MURADAKHANYAN, a/k/a "Manch,"
LIANA SOGHOYAN, TIKRAN TAKVORYAN, GAYANE KHATCHATURYAN, GAGIK
KYURKCHYAN, ANNA ZAICHIK,ARON CHERVIN,KAREN AHARONIAN,
ARMEN GRIGORIAN,KAREN MARKOSIAN,ANNA TERMARTIROSYAN, MICHAEL
DOBRUSHIN, SAMVEL HAKOPYAN, and RAFIK TERDJANIAN,
Defendants.

### INDICTMENT

10 Cr. ___ (___)

(18 U.S.C. §§ 371, 1001, 1028, 1029, 1344, 1347, 1349,
1546,1956(h), 1957, 1961, 1962.)

PREET BHARARA
United States Attorney.

A TRUE BILL

_Foreperson._

4/30/10   Indictment filed under seal

Pitman, US M J.