UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>ARMEN KAZARIAN,<br>a/k/a "Pzo," a/k/a "Qerop," *et al.*,<br>Defendants. | : | Case No. 10-CR-895-PGG-1 |

# ARMEN KAZARIAN'S MEMORANDUM IN REPLY TO THE OPPOSITION OF THE UNITED STATES TO MOTION FOR DISCLOSURE OF INFORMANT INFORMATION

By: Mark J. Geragos,
CA SBN 108325
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 625-3900
Attorney for Defendant
Armen Kazarian

To: Preet Bharara, ESQ.
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Attn: Arlo Devlin Brown / Jennifer Burns
Assistant United States Attorneys

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Armen Kazarian respectfully submits this memorandum of law in response to the Government's opposition to his Motion to Disclose Informant Information. The Government's opposition fails to provide a single argument, beyond mere speculation, as to why the contents of the informants' communications should not be disclosed. Although the defense is seeking the content of informant communications, and not the identities of the informants, the Government's opposition focuses on why the informants' identities must remain confidential.

The Government argues that the disclosure of the contents of the communications will somehow compromise the safety of the informants, and that disclosure of these communications at a later date will not prejudice Mr. Kazarian. Both of these arguments are defective. The Government offers no proof that the contents of the informants' speech will lead to identification. The Government also fails to offer any evidence to support its unfounded notion that informant safety would be compromised by disclosure of the contents of informant communications. Given that Mr. Kazarian has no history of violent crime and has never been convicted of or even charged with a violent offense, the Government's arguments about safety are not justified.

On the other hand, if the contents of such communications are not disclosed at this time, Mr. Kazarian will be prejudiced in his defense, namely in challenging probable cause and preparing suppression motions. Accordingly, Mr. Kazarian respectfully requests that this Court order the Government to disclose: (1) whether there are confidential informants; (2) the number of such informants; and (3) the contents of the informants' communications with the Government.

## II.

## THE CONTENTS OF THE INFORMANT COMMUNICATIONS SHOULD BE DISCLOSED.

### A. Mr. Kazarian Has Met the Burden Required to Command Disclosure of the Contents of the Informants' Communications.

Because Mr. Kazarian is not seeking the identity of the Government's informants at this time, the standard the Government cites is inapplicable. In reliance on *Roviaro v. United States*, 353 U.S. 53, 59 (1957), the Government argues that it is of no moment if the information is "useful" or "helpful" to the defense and that Mr. Kazarian must instead demonstrate that the information sought is "material to the defense." However, in *Roviaro v. United States*, the United States Supreme Court held, "where the disclosure of an informer's identity, or of the contents of his communication, **is relevant and helpful to the defense of an accused**, or is essential to a fair determination of a cause, the privilege must give way." *See id.* at 60-61 (emphasis added).

The other cases the Government cites such as *United States v. Ahmade,* 992 F.Supp. 682 (S.D.N.Y. 1998), *United States v. Martinez,* 634 F.Supp. 1144 (S.D.N.Y. 1986), and *United States v. Love,* 859 F.Supp. 725 (S.D.N.Y. 1994) also deal with disclosing the identity of the informant, rather than the contents of the communications. Given that the identities of the informants are not sought by Mr. Kazarian at this time, these cases are distinguishable.

Furthermore, contrary to the Government's argument, the court in *United States v. Martinez* found "[t]he government's privilege to withhold an informer's identity gives way only where his identity is 'relevant and helpful to the defense . . .'" *See Martinez, supra,* 635 F.Supp. at 1150 (holding that the identity of the informant need not be released because it was not helpful to preparing the

defense). Accordingly, even where the disclosure of identity and not content is at issue, the Government's own authority applies the "helpful to the defense" standard, not the "material to the defense" standard. *See id.*

Even though the "helpful to the defense" standard is applicable, Mr. Kazarian has demonstrated in his moving papers that the disclosure of the contents of the informants' communications are "essential to the defense." Despite this Court's repeated requests, the Government has failed to produce any evidence that connects Mr. Kazarian to the serious charges in the instant case. In light of the fact that the Government has proffered no other evidence, the only logical explanation is that any evidence the Government has has was provided by informants. Under these circumstances, the disclosure of the existence of any informants, the number of informants, and the contents of the informants' communications are essential to the preparation of the defense. Without such information, Mr. Kazarian will not be able to attack any of the Government's alleged evidence.

## B. Disclosure of the Contents of the Communications Would Not Jeopardize Witness Safety.

The Government has offered no evidence or authority, beyond mere speculation, to support its argument that disclosing whether there are informants, the number of informants, and the contents of the informants' communications would jeopardize witness safety. Although Mr. Kazarian reserves the right to seek disclosure of the informants' identities at a later time, he does not seek that information in the instant motion.

The Second Circuit has rejected arguments that the safety of informants will be jeopardized based on the release of the "**substance** of the informants' statements." *See Sira v. Morton,* 380 F.3d 57, 75 (2d Cir. 2004) (neither the statements nor any evidence in the record suggested that the disclosure of the

substance of the informants' statements would pose safety risks). Moreover, the Second Circuit has found that producing an informant for an *in camera* hearing with defense counsel and the court would not jeopardize the informant's safety. *See United States v. Saa*, 859 F.2d 1067, 1075 (2d Cir. 1988).

Prior to this case, Mr. Kazarian had a sparse criminal history and he has never been charged with or convicted of a violent criminal offense. There is no basis on which to assume that Mr. Kazarian is a violent man. And the Government has offered no evidence, beyond questionable telephone calls, to show the contrary. Accordingly, the Government's safety concerns are unfounded. As noted above, the Second Circuit has found that interviewing an informant in an *in camera* setting, a procedure that would disclose the informant's identity, does not jeopardize the informant's safety. *See Saa, supra*, 859 F.2d at 1075.

Furthermore, the Government's analysis that the informants' safety will be jeopardized is premised on the assumption that their identities will be disclosed. However, as explained above, Mr. Kazarian does not seek disclosure of the informants' identities at this time. Where the disclosure of a communication will not tend to reveal the identity of the informer, **the contents are not privileged**." *Roviaro, supra,* 353 U.S. at 60 (emphasis added). In light of the fact that the Government offers no proof as to how the mere contents of the informants' communications will pose a safety risk, disclosure should be allowed. *See Saa, supra*, 859 F.2d at 1075*; Sira, supra,* 380 F.3d at 75; *Roviaro, supra,* 353 U.S. at 60.

//

//

//

//

//

## C. Mr. Kazarian Will Be Prejudiced if the Contents of the Informants' Communications Are not Disclosed.

A defendant is not required to show prejudice before disclosure of the contents of informants' communications are disclosed. *See Roviaro, supra*, 353 U.S. at 60-61. The Government argues that Mr. Kazarian must prove prejudice before the contents of the informants' communications may be disclosed. However, *Roviaro v. United States*, one of the leading cases in this field, and a case relied on by the Government, does not state that a defendant must show prejudice for the Government to disclose the contents of informant statements. *See id.* Rather, the Government seeks to impose a standard on Mr. Kazarian that is not required by the law.

Although a showing of prejudice is not required, Mr. Kazarian will, in fact, be prejudiced if the informant information sought by the motion is not disclosed. As the Court is aware, Mr. Kazarian plans to file a motion challenging the Government's wiretaps. The wiretaps were conducted after the Government likely received information from confidential informants, i.e., probable cause to conduct the wiretap operation.

According to the Second Circuit, the main question when assessing probable cause based on informant information is whether the information is reliable. *United States v. Wagner*, 989 F.2d 69, 72-73 (2d Cir. 2004). Information is reliable if it is corroborated in material respects by independent evidence. *See id.* Under this standard, Mr. Kazarian can attack whether there was probable cause to conduct wiretaps of his telephones if he learns the contents of the informants' communications. Demonstrating that the information provided by the informants is not corroborated by independent evidence would provide a potent attack on the Government's wiretaps. *See id.* However, if the contents of these communications are not revealed, a probable cause challenge will be foreclosed.

The Government's failure to produce any evidence connecting Mr. Kazarian to the Medicare allegations, despite numerous requests and opportunities, is telling. Given that no discovery has been produced corroborating the Government's allegations of Medicare fraud by Mr. Kazarian, the allegations are likely only supported by uncorroborated statements of informant witnesses. If the Government does not reveal the informant communications at this juncture, Mr. Kazarian will have no way of attacking the existence of probable cause to wiretap.

Under *Roviaro,* there is no fixed rule that governs the disclosure of informant information. *See Roviaro, supra,* 353 U.S. at 62; *see also United States v. Jackson,* 345 F.3d 59, 69-70 (2003). Rather, the court must balance the public interest in protecting the flow of information against the defendant's right to prepare a defense, based on "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *See id.* This balancing test moves in favor of Mr. Kazarian in the instant case.

Without the informant information, Mr. Kazarian will be unable to attack the Government's wiretaps, will be unable to prepare his defense, and will be unable to attack the basis of the Government's evidence. On the other hand, exposure of the information Mr. Kazarian seeks at this stage will have no impact on the Government's interests in "protecting the flow of information" and preserving the secrecy of the informant's identity. *See Roviaro, supra,* 353 U.S. at 61-63. Releasing the information sought will still preserve the identity of the informants and will still encourage citizens to report crimes to law-enforcement. *See id.* at 59.

The Government contends that disclosure of impeachment evidence under *Giglio v. United States*, 405 U.S. 150 (1972) and exculpatory evidence under *Brady v. Maryland,* 373 U.S. 83, 87 (1963), need not be released prior to trial. Rather, materials under *Brady* and *Giglio* must be released when "they would have

a reasonable probability of changing the outcome of the proceedings." *See Jackson, supra*, 345 F.3d at 68-69 (internal citations omitted). The Government's own authority, *United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001), provides that this material must be released when there is a reasonable probability that it would produce a different result at trial. *See id.* at 144. That standard is met in these circumstances.

If the Government does not disclose the information, Mr. Kazarian will be unable to attack the wiretaps. Consequently, this will hinder Mr. Kazarian's defense at trial since the Government's case against him is built on the wiretaps. In *Jackson*, the Second Circuit held that the failure to disclose such information "...would permit the government to avoid disclosure of exculpatory or impeachment material simply by not calling the relevant witness to testify." *See Jackson, supra*, 345 F.3d at 71. Given these standards, the informant information must be disclosed.

### D. The Government's Attempt to Reclassify Informants as Witnesses is of No Moment

The Government claims that "confidential sources, cooperating witnesses and lay witnesses" are somehow different than "confidential informants." The Government merely attempts to reclassify the informants to avoid the required disclosures. Additionally, this distinction is of no moment because when compared to wiretaps, informants and witnesses are less intrusive investigative methods. Pursuant to Section 2518(1)(c) of the United States Code, each application for an order authorizing or approving the interception of a wire, oral, or electric communication shall include: "**a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too**

**danger...**"  *See* 18 U.S.C. § 2518 (1)(c) (emphasis added).

The Second Circuit has found that an affidavit to support a wiretap requires a showing that less intrusive investigative procedures have been tried or are unlikely to succeed if tried.  *See United States v. Lilla*, 699 F.2d 99, 102 (2nd. Cir. 1983).  Specifically, the affidavit must provide some basis for concluding that less intrusive investigative procedures are not feasible.  *See id.*  This requirement encourages law enforcement to consider other procedures before resorting to wiretaps.  *See id.*  In *United States v. Lilla*, the Second Circuit suppressed wiretaps because it found that the affidavit did not reflect that other investigative procedures were unlikely to succeed.  *See id.* at 104.  In that case, the Court found that customary investigative procedures, **such as information gathered from informants**, were successful.  *See id.* (emphasis added).  Accordingly, the Second Circuit found the affidavit supporting the eavesdropping warrant was insufficient. *See id.* at 105.

Based on the requirements of the United States Code and the standards articulated in *Lilla*, the Government must have exhausted these less invasive measures prior to resorting to wiretaps.  *See* 18 U.S.C. § 2518 (1)(c); *Lilla, supra,* 699 F.2d at 102.  Given that informants are a form of less invasive investigation, it follows that they were used because otherwise the Government's wiretap affidavits could be attacked.  *See Lilla, supra,* 699 F.2d at 105.  Given these standards, the informant information must be disclosed.  The contents of the communications will reveal whether the Government properly exhausted the investigative procedures prior to utilizing the wiretaps.  *See id.*  Without these disclosures, the Government would be encouraged to use "wiretapping as a substitute for standard investigative procedures..."  *See id.*

//

//

## III.
## CONCLUSION

For the foregoing reasons, Mr. Kazarian respectfully requests this Court order that the Government disclose: (1) whether there are informants; (2) the number of informants; and (3) the contents of the informants' communications with the Government. Mr. Kazarian reserves the right to file a later motion requesting the disclosure of the informants' identities.

Dated: May 12, 2011

GERAGOS & GERAGOS, APC

By: /s/
MARK J. GERAGOS
Attorneys for Defendant
Armen Kazarian