UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 10-CR-895-PGG-1 |
| ARMEN KAZARIAN, | : | |
| a/k/a "Pzo," a/k/a "Qerop," *et al.*, | : | |
| Defendants. | : | |

-----------------------------------------x

# ARMEN KAZARIAN'S MEMORANDUM IN REPLY TO THE OPPOSITION OF THE UNITED STATES TO MOTION TO SUPPRESS POST ARREST STATEMENTS


By: Mark J. Geragos,
CA SBN 108325
644 South Figueroa Street
Los Angeles, California 90017
Tel: (213) 625-3900
Attorney for Defendant
Armen Kazarian


To: Preet Bharara, ESQ.
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007
Attn: Arlo Devlin Brown / Jennifer Burns
Assistant United States Attorneys

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Armen Kazarian respectfully submits this memorandum of law in response to the Government's opposition to his Motion to Suppress Post Arrest Statements. Throughout the pendency of these proceedings, the defense has pointed to miscommunications and mistranslations that have occurred because of Armen Kazarian's rare Armenian dialect. Mr. Kazarian's Armenian dialect is unique and incorporates numerous colloquial terms and Russian words. This dialect creates a language barrier between Mr. Kazarian and other Armenian speakers and has resulted in incorrect wiretap translations, miscommunication during interview sessions, and inaccurate translations. Mr. Kazarian's language barrier, coupled with his lack of literacy, thwarted him from making a knowing and voluntary waiver of his *Miranda* rights when he was taken into custody by the Federal Bureau of Investigation ("FBI").

Despite Mr. Kazarian's obvious language barrier, the Government now seeks to utilize Mr. Kazarian's post arrest statements against him. Doing so would be a violation of Mr. Kazarian's most basic rights. Mr. Kazarian did not understand the Armenian interpreter that was provided to him and he did not understand the document that he signed. These facts demonstrate that Mr. Kazarian never provided a knowing and voluntary waiver of his *Miranda* rights.

## II.

## THE POST ARREST STATEMENTS MUST BE SUPPRESSED.

### A. An Evidentiary Hearing Should be Conducted.

"Although suppression hearings are not always required, a court should

hold a hearing when the motion alleges facts that, if proved, would require the suppression of evidence." *See United States v. Awadallah*, 202 F.Supp.2d 17, 20 (S.D.N.Y. 2002) (internal citations omitted). An evidentiary hearing on a motion to suppress is ordinarily required when the moving papers are detailed and nonconjectural to enable the court to conclude that there are contested issues. *See United States v. Pena*, 961 F.2d 333, 339 (2nd. Cir. 1992).

That standard is met in this case because the assertions contained in Mr. Kazarian's moving papers cast doubt on the Government's *Miranda* procedures and demonstrate that Mr. Kazarian's waiver was not voluntary and knowing. These facts, if proven true, will lead to the suppression of Mr. Kazarian's post arrest statements. In the event the Court requires a further evidentiary showing or for greater detail about the factual issues, these items can be provided during the hearing on this matter.

### B. The Post-*Miranda* Statements Must be Suppressed Because They Are "Fruit of the Poisonous Tree."

If an electronic wiretap was conducted illegally, any information derived from that wiretap must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471 (1963). The "fruit of the poisonous tree" doctrine broadly applies to evidence that is tainted by illegality. *See id.* In *United States v. Lilla*, 699 F.2d 99 (2d Cir. 1983), the Second Circuit suppressed the fruits of a New York State issued eavesdrop warrant. The *Lilla* Court observed that "[t]he requirement of a 'full and complete statement' regarding procedures attempted desirability of using less intrusive procedures and to provide Courts with some indication of whether any efforts were made to avoid needless invasion of privacy. Like other courts, we reject generalized and conclusury statements that other investigative procedures would prove

unsuccessful." *See Lilla, supra,* 699 F.2d at 104.

The crux of the Government's evidence against Mr. Kazarian was collected through wiretaps. Mr. Kazarian plans to file a motion to suppress the information derived from these wiretaps and to challenge their validity. Accordingly, any evidence obtained through the illegal wiretaps must be suppressed as "fruit of the poisonous tree." *See Wong Sun, supra,* 371 U.S. 471; *see also Lilla, supra,* 699 F.2d at 104. The Government's moving papers fail to address this point.

**C. The Government's Questioning Was a Two-Step Interview.**

The two-step *Miranda* questioning is applicable in this case because Mr. Kazarian did not understand his rights when they were administered. Accordingly, the rights that were allegedly administered through the written document were akin to Mr. Kazarian's first advisement of his *Miranda* rights. It is also questionable to verbally advise a potential defendant, interrogate him, and after having heard his testimony, collect a so-called written waiver from him.

The Government fails to meet its burden that *Miranda* rights were properly administered if a federal agent interrogated the defendant twice after his arrest, both before and after giving him *Miranda* warnings. *United States v. Williams,* 2010 WL 5158158, *18 (S.D.N.Y. 2010). When an agent's purpose in questioning the defendant was to elicit incriminating testimonial response and agent never told the defendant that his earlier non-*Miranda* statement would be inadmissible, and all of the statements must be excluded. *See id.* This type of questioning occurred in the instant case. Mr. Kazarian did not understand the interpreter. His unique Armenian dialect caused him to be confused and unable to properly communicate his thoughts. As such, when he

initially was orally advised, he did not properly understand the true nature of his rights. Accordingly, this initial "advisement" should be wholly disregarded. Mr. Kazarian was only asked to sign a written waiver after the questioning ceased. This practice is strongly similar to the two-step interrogation process.

The United States Supreme Court has found that this two-step tactic undermines the *Miranda* warnings. *Missouri v. Seibert*, 542 U.S. 600, 601. Specific attention must be paid to this question-first strategy. *See id.* Administering *Miranda* rights after questioning deprives a defendant of knowledge essential to his ability to understand the nature of his rights. *See id.* Given the policy against the two-step interview process, Mr. Kazarian's statements should be suppressed.

## D. Mr. Kazarian Did Not Knowingly and Voluntarily Waive His *Miranda* Rights.

Mr. Kazarian did not knowingly and voluntarily waive his Miranda rights. Therefore, his statements were elicited in violation of Mr. Kazarian's Fifth Amendment rights. In their opposition to Mr. Kazarian's motion to suppress post arrest statements, the Government relies on the fact that an Armenian interpreter was present during Mr. Kazarian's post arrest interrogation to interpret the oral advisement and the Miranda waiver form to Mr. Kazarian. The Government fails to acknowledge that both the verbal interpretation and translation from English to Armenian were in a dialect that Mr. Kazarian is unable to understand or read.

"To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, (2d Cir. 1995)

F.3d 539, 542. A knowing and intelligent waiver does not require that the accused understand every consequence of a waiver. *United States v. Richardson*, (E.D.N.Y. Dec. 23, 2010), 2010 WL 5437206. However, the accused must be aware of his choice not to talk to law investigating officers, his right to have counsel present, and his right to discontinue talking at anytime. *Id*.

A defendant's knowing waiver can be inferred by his conduct throughout the interrogation and his general behavior inside and outside of the court. *United States v. Todisco*, 667 F. 2d 255 (2d Cir. 1981.) The case at hand may be distinguished from *United States v. Todisco*, 667 F. 2d 255 (2d Cir. 1981) because Mr. Kazarian's in court conduct has demonstrated his inability to understand English, and that he speaks a unique dialect of Armenian. The various proceedings in this case conducted before this Court have made it clear that Mr. Kazarian's language barrier is an on-going issue. Language related problems in this matter have specifically involved the various dialects of the Armenian language and Mr. Kazarian's limited understanding of a unique form of the Eastern dialect. In *Todico* the Second Circuit affirmed the district court's rejection of the claim that defendant did not understand English partly due to several recorded telephone conversations where the defendant either spoke or responded to English. In the present case, the English language was absent from the hours and hours of wiretap recordings produced by the Government. However, more significantly, the wiretap recordings were translated incorrectly by the same interpreter that was used during questioning proceedings due to the interpreter's conflicting Armenian dialect. Thus, by looking at Mr. Kazarian's general behavior inside and outside of the court, it cannot be inferred that Mr. Kazarian knowingly and intelligently waived his Miranda rights based on his obvious inability to understand English and his

understanding of a specific dialect of Armenian that is distinct from that of the Government's interpreter.

The Court's inquiry of whether the accused knowingly and intelligently waived his Miranda right is a "case-specific determination." *Id*. The Government cites to the facts in cases where the court found defendant did voluntarily waive his Fifth Amendment rights when he failed to indicate that he did not understand the warning and subsequent questions. (See Government's Opposition at p. 9-10.) In the present case, because Mr. Kazarian does not understand English or the dialect that the interpreter was using, he was unable to properly communicate his confusion during the questioning.

The language barrier that existed between Mr. Kazarian and the FBI investigators, including the Armenian interpreter, compromised Mr. Kazarian's ability to knowingly and intelligently waive his Miranda rights. Mr. Kazarian did not understand his choice not to talk to investigators. To the contrary, Mr. Kazarian thought he was obliged to submit to the questioning and sign the waiver thereafter. Although an interpreter was present during questioning, Mr. Kazarian did not understand the Armenian dialect the interpreter was using. Mr. Kazarian's limited understanding of both the English language and the Armenian dialect that it was translated into did prevent Mr. Kazarian from making a knowing, intelligent, and voluntary waiver of his Fifth Amendment right against self-incrimination.

//

//

**III.**

## CONCLUSION

Accordingly, Mr. Kazarian respectfully requests that Mr. Kazarian's post arrest statements be suppressed.

Dated: May 12, 2011 GERAGOS & GERAGOS, APC

By: /s/
MARK J. GERAGOS
Attorneys for Defendant
Armen Kazarian